## THE ELKRIDGE.

## THE BALTO.

Circuit Court of Appeals, Second Circuit.
February 4, 1929.

No. 172.

Charles H. Tuttle, U. S. Atty., of New York City (Charles E. Wythe, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Haight, Smith, Griffin & Deming, of New York City (John W. Griffin, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). The appellant asserts that the award is insufficient in amount, while the appellee asks us to reduce it, so as to allow the Elkridge, in addition to her expenses, only $1,000 a day for the 14 days occupied in salvage service. On the one side are stressed the risk involved, the unprecedented length of the towage, and the complete success of the salvors' efforts; on the other, the fact that the Elkridge was not taken from a profitable hire, but was operating at a loss when called upon for aid, and that her service, though unusual in length and admittedly well done, was merely towage, and most of it in moderate weather.

■■■ In a careful opinion a competent trial judge has thoroughly considered the various elements which may properly be taken into account in rewarding salvage services. Under such circumstances, an appellate court is loath to change an award, unless it appears to be based upon incorrect principles, or a misapprehension of the facts, or seems so grossly excessive or inadequate as to be deemed an abuse of discretion. The Kanawha, 254 F. 762, 764 (C. C. A. 2); The Cornell, 15 F.(2d) 275, 276 (C. C. A. 2); Rodriguez v. Bagalini, 17 F.(2d) 921, 922 (C. C. A. 9); Standard Oil Co. v. Cooley, 23 F. (2d) 841 (C. C. A. 5). None of these conditions exist here. It would be as futile to attempt by an analysis of the authorities to lay down any hard and fast rule for determining the quantum of an award on the basis of a percentage of values, as it is needless to repeat the considerations which should be taken into account. It suffices to say that under the facts of the instant case we are satisfied that the award of $25,000 was properly determined and is just to both vessels.

■ The second contention of the appellant is that administrative expenses and insurance ought to be included in the allowance of out-of-pocket expenses. The general overhead expense of the owner of a vessel goes on, irrespective of the particular service in which she engages. In the case of the government-owned Elkridge, insurance was merely a bookkeeping entry, not an actual expenditure. The District Court correctly held that the excluded items did not represent expenses which resulted from the salvage service.

■ It is also urged that the United States is under statutory liability to pay compensation to the dependents of the two men who were drowned, and that, while the record does not disclose the amounts which must be paid, we should take judicial notice of the existence of the liability, and should increase the award because of it. Loss of life may have a bearing on the element of risk involved in the salvage service; but the fact that the government must pay for the loss of life does not increase the value of such service to the salved vessel, nor the amount she should be required to pay her salvors. See The Amerika, L. R. [1917] A. C. 38; Oelwerke Teutonia v. Erlanger, 248 U. S. 521, 525, 39 S. Ct. 180, 63 L. Ed. 399.

■ Lastly, we are asked by the government to reapportion the award between the vessel and her crew, even though no additional amount be awarded against the Balto. The District Judge gave the vessel four-fifths of the award of $25,000 and the men one-fifth, and directed that the crew's share be distributed by allotting $1,000 to the representatives of the two men who were lost, to be divided in accordance with their ratings, and $4,000 to the members of the crew, to be divided in accordance with their ratings, except that the seaman who was saved from the capsized boat should receive four portions, and the men who manned the boat which picked him up should receive double portions. The District Judge did not have before him evidence to show just how such a division would result between the several members of the crew and the personal representatives of the deceased members. A computation has been presented to us, from which it appears that the share of the lost second mate will be $725.27, the share of the lost seaman $274.73, the share of the rescued seaman $261.88, and a single portion for an able seaman $65.47. In view of the government's request that the crew's allotment be increased and reapportioned, we think the portion of the decree now under consideration should be modified. Under the circumstances of this case, where the Elkridge was earning nothing, and her risk of injury while performing the service was not

620

great, we think a division of one-fourth of the award to the men and three-fourths to the ship will be proper. This will give the ship $18,750, plus her expenses, and leaves $6,250 to be divided among the crew.

In Kennedy on Salvage (2d Ed.) p. 201, it is said: "If a salvor dies before the court adjudicates upon the salvage claim, the share to which he would have been entitled is secured to his personal representatives. Instances of this will be found in The Marquis of Huntly, 3 Hagg. 246, and The Anna Helena, 5 Asp. M. C. 142." In the Marquis of Huntly Case the court made a specific allowance of £100 to the representatives of three men whose lives were lost, £50 being allotted for the lost master and £25 each for the two men. In the second case cited by Kennedy, the court made a general award of £150, "in which sum the personal representatives of the salvor who lost his life are to share." Apparently either type of provision for the representatives of deceased members of the crew is proper.

It is argued by the appellant that it is inequitable to give the rescued seaman practically the same sum as is allotted to the representatives of the seaman who lost his life in the same accident. In reply, however, it may be said that each incurred the same risk, and that the statutory liability to dependents of the lost seaman is intended to compensate them for the pecuniary loss resulting therefrom. We think, therefore, that the $6,250 allotted to the crew may fairly be apportioned as follows: $1,250 to the representatives of the two men who were lost, to be divided according to their ratings; $5,000 to the members of the crew, to be divided according to the rules of division laid down by the trial judge for the distribution of the smaller sum of $4,000.

The decree is modified in accordance with the foregoing opinion, and, as so modified, is affirmed.